ROXIE KEEL v. H & V INCORPORATED D/B/A ACE ONE HOUR CLEANING

No. 9110IC770

(Filed 6 October 1992)

1. **Master and Servant § 68 (NCI3d) — workers' compensation — plaintiff's exposure to fumes — occupational disease — physician's medical opinion — sufficiency of evidence**

A physician's medical opinion was sufficient evidence to support the Industrial Commission's finding of fact that plaintiff suffered from an occupational disease where the evidence revealed that the physician's medical opinion was based upon personal examination and testing of plaintiff, an assessment of the circumstantial evidence surrounding the onset and development of the disease, and articles on solvent-induced lung injury; furthermore, the evidence was not insufficient because the physician did not know the quantity or quality of plaintiff's exposure to PCE while she worked for defendant cleaners, since the degree of exposure does not need to be measured during a claimant's employment, and any evaluation of the workplace for the agent in question after claimant's departure would not quantify claimant's exposure.

Am Jur 2d, Workers' Compensation § 597.

Workmen's compensation: use of medical books or treatises as independent evidence. 17 ALR3d 993.

2. **Master and Servant § 93.2 (NCI3d) — workers' compensation — additional evidence taken by Commission — subsequent exclusion discretionary**

Where the decision to take additional evidence is discretionary in nature and neither party has put forth good cause

KEEL v. H & V INC.

[107 N.C. App. 536 (1992)]

for such evidence to be considered, the Industrial Commission may decide to exclude evidence which it has previously seen fit to hear.

**Am Jur 2d, Workers' Compensation § 564.**

APPEAL by defendant from Opinion and Award of the North Carolina Industrial Commission filed 20 December 1990. Heard in the Court of Appeals 26 August 1992.

Plaintiff filed this workers' compensation claim on 5 March 1987, alleging an occupational disease caused by exposure to perchloroethylene fumes emanating from the dry cleaning solution used in the workplace. The deputy commissioner determined that plaintiff's total disability was "due to causes and conditions which are characteristic of and peculiar to her particular trade, occupation or employment" and awarded compensation under § 97-53(13). The Full Commission adopted the decision of the deputy commissioner. Defendant appeals. We affirm.

*Taft, Taft & Haigler, by Robin E. Hudson, for plaintiff-appellee.*

*Colombo, Kitchin & Johnson, by W. Walton Kitchin, Jr., for defendant-appellant.*

LEWIS, Judge.

The evidence before the Commission tended to establish the following:

Plaintiff-employee, Roxie Keel, is a 42 year old woman (she was 36 years old at the time of initial diagnosis) with a tenth grade education who worked for defendant dry cleaner from October 1985 until June 1986. For the first three months, plaintiff washed, pressed and removed spots. In January 1986 she began operating a dry-cleaning machine. During the required maintenance of the machine, plaintiff was regularly exposed to perchloroethylene (PCE), a chemical component of the dry-cleaning solution, while cleaning the filters. Plaintiff contended that contact with the fumes of the dry-cleaning solution caused eye irritation and tears, dizziness, perspiration, coughing and later, shortness of breath. The fumes were so strong that on occasion plaintiff was forced to sit down. By June 1986 plaintiff's shortness of breath became so pronounced that she left the job.

KEEL v. H & V INC.

[107 N.C. App. 536 (1992)]

Plaintiff was treated by her family physician until November 1986 when she was referred to a pulmonary specialist, Dr. Albert Driver. Dr. Driver diagnosed plaintiff's condition as interstitial pulmonary fibrosis which he attributed to her exposure to fumes in the workplace. An industrial hygienist, at Dr. Driver's request, tested defendant's dry-cleaning premises on 12 November 1986. He found airborne concentrations of PCE that were "only 7% of the recommended exposure limits" and determined that there were "no recognized significant health hazards." The hygienist testified via deposition that the "[p]otential health effects associated with perchloroethylene are basically irritation of the eyes and upper respiratory system, central nervous system depression, and possible liver/kidney damage." He stated that human studies revealed no response to seven hours continuous exposure to PCE in concentrations of 100 parts per million. The hygienist speculated that prior occupational exposure might have contributed to plaintiff's illness, though no evidence of such exposure was present.

Dr. Driver examined plaintiff and was unable to find signs of any causative agent except chemical exposure, nor were symptoms of other causative agents documented in plaintiff's old medical records. A chest x-ray taken in 1982 was "entirely normal." As a progressive disease, evidence of interstitial fibrosis would have shown up on x-ray or through other symptoms had the disease pre-dated plaintiff's employment with defendant. Dr. Driver specifically excluded plaintiff's history of smoking as a causative factor. He stated that plaintiff did not attribute her illness to work related chemical exposure, but named PCE in answer to specific questions regarding her exposure to chemical fumes in the workplace.

Due to the strong "circumstantial or . . . chronologic[al] association" between the evolution of plaintiff's symptoms and her employment, Dr. Driver testified: "there's a reasonable certainty in my mind that the occupational exposure to fumes in the work place were significant factors in the development of interstitial fibrosis." Dr. Driver pointed to three case reports in the literature which, though not linking PCE to interstitial fibrosis, did report studies "where these solvents ha[d] been injurious to the lungs and, I, I see no reasons why these chemicals could not have affected this particular patient." As plaintiff has experienced minimal improvement in her condition, Dr. Driver testified that plaintiff is "almost totally impaired" and is unable to "perform any physical exertion."

KEEL v. H & V INC.

[107 N.C. App. 536 (1992)]

Prior to her employment with defendant, plaintiff had held various jobs including four and one-half years in the dry cleaning industry, but had never operated a dry cleaning machine and had never encountered significant respiratory problems. Plaintiff is unable to perform her former jobs or any other job which would require physical exertion. She is without the education or the training to perform other types of work. Plaintiff has been unemployed since leaving defendant's business in June of 1986.

"For an injury or death to be compensable under our Workmen's [now Workers'] Compensation Act it must be either the result of an 'accident arising out of and in the course of the employment' or an 'occupational disease.'" *Booker v. Duke Medical Center*, 297 N.C. 458, 465, 256 S.E.2d 189, 194 (1979). "A disease is an occupational disease compensable under N.C. Gen. Stat. 97-53(13) if claimant's employment exposed him "to a greater risk of contracting this disease than members of the public generally, . . ." and such exposure "significantly contributed to, or was a significant causal factor in, the disease's development." *Gay v. J. P. Stevens & Co. Inc.*, 79 N.C. App. 324, 330, 339 S.E.2d 490, 494 (1986) (citing *Rutledge v. Tultex Corp.*, 308 N.C. 85, 101, 301 S.E.2d 359, 369-70 (1983)). Workplace exposure is a significant factor if without the exposure "the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." *Id.* (citing *Rutledge*, 308 N.C. at 102, 301 S.E.2d at 370). The significance of exposure may be determined by medical evidence as well as "(1) the nature and extent of claimant's occupational exposure, (2) the presence or absence of other non-work-related exposures and components which contributed to the disease's development, and (3) correlations between claimant's work history and the development of the disease." *Id.* at 331, 339 S.E.2d at 494 (citing *Rutledge*, 308 N.C. at 105, 301 S.E.2d at 370). Claimant has the burden of proof, but, "if the occupational exposure in question is such that it augments the disease process to any degree, however slight, the employer is liable." *Id.* (citing *Rutledge*, 308 N.C. at 89, 301 S.E.2d at 362); *see also, Hansel v. Sherman Textiles*, 304 N.C. 44, 53, 283 S.E.2d 101, 106 (1981) (where the claimant has non-occupational infirmities, the Commission should consider whether the occupation accelerated or aggravated the condition and contributed to claimant's disablement.) "In addition, the substance to which plaintiff was last injuriously exposed need not be in a substance known to cause the disease." *Gay*, 79 N.C. App. at 330-31,

339 S.E.2d at 494 (citing *Caulder v. Waverly Mills*, 314 N.C. 70, 74, 331 S.E.2d 646, 649 (1985)).

"Where the Commission awards compensation for disablement due to an occupational disease encompassed by G.S. 97-53(13), the opinion and award must contain findings as to the characteristics, symptoms and manifestations of the disease from which the plaintiff suffers, as well as a conclusion of law as to whether the disease falls within the statutory provision." *Hansel*, 304 N.C. at 54, 283 S.E.2d at 106-07. Review of Industrial Commission decisions is limited to a determination of " 'whether there was competent evidence before the Commission to support its findings and . . . whether such findings support its legal conclusions.' (Citation omitted.) This Court cannot substitute its judgment for that of the Commission." *Gay*, 79 N.C. App. at 325, 339 S.E.2d at 491. Findings of fact, when supported by competent evidence, are conclusive on appeal. *Id.*

[1] Defendant contends that the Commission erred in two respects. First, defendant argues that the evidence was insufficient to support the Commission's findings of fact and conclusions of law because the only evidence presented on causation was that of a single physician whose "opinion was grounded in speculation and not in medical facts." Defendant asserts that Dr. Driver's opinion on causation was based upon faulty information because he (1) did not know the quantity or quality of plaintiff's exposure to PCE, (2) assumed that plaintiff had been employed with defendant since September 1984, instead of November 1985, (3) failed to consider the material fact that plaintiff had previously worked in the cleaning industry, (4) based determination of causation in part on plaintiff's assertion that PCE contributed to her illness, (5) lacked experience in treating other patients with PCE lung injuries, and (6) relied upon a research of the literature to attribute PCE exposure to interstitial fibrosis. Also, defendant contends that in light of the hygienist's findings of low concentrations of airborne PCE at Ace Dry Cleaning premises, causation is attenuated at best.

We disagree. Circumstantial evidence of the causal connection between the occupation and the disease is sufficient. *Booker*, 297 N.C. at 476, 256 S.E.2d at 200. Medical opinions given may be based either on " 'personal knowledge or observation or on information supplied him by others, including the patient. . . .' " *Id.* at 479, 256 S.E.2d at 202 (citation omitted). Absolute medical certainty is not required.

KEEL v. H & V INC.

[107 N.C. App. 536 (1992)]

Defendant correctly asserts that there are no findings of fact with regard to the quantity of PCE at defendant's dry-cleaning establishment. Our Supreme Court rejected the requirement that an employee quantify the degree of exposure to the harmful agent during his employment. *Gay*, 79 N.C. App. at 333-34, 339 S.E.2d at 495-96 (citing *McCuiston v. Addressograph-Multigraph Corp.*, 308 N.C. 665, 668, 303 S.E.2d 795, 797 (1983)). Any evaluation of the workplace for the agent in question after claimant's departure, as here, would not quantify claimant's exposure, but would merely "guesstimate" it. Since the degree of exposure does not need to be measured during claimant's employment, it should not need to be quantified in findings of fact, either. The evidence reveals that Dr. Driver's medical opinion was based upon personal examination and testing of plaintiff and an assessment of the circumstantial evidence surrounding the onset and development of the disease as well as the articles on solvent-induced lung injury. We find that Dr. Driver's medical opinion is sufficient evidence to support the Commission's finding of fact that plaintiff suffered from an occupational disease.

[2] Second, defendant contends that the Commission erred in excluding additional evidence which it had solicited *sua sponte*. Upon defendant's appeal of the deputy commissioner's award, the Full Commission issued an order, filed 7 February 1990, which required plaintiff to submit to examination by a Dr. Kunstling.

By letter dated 17 January 1991, the Commission informed defendant's counsel that the 7 February 1990 order "set out the procedure in unmistakable terms. It was not a request to negotiate the composition of the record. It offered both parties the opportunity to depose the doctor within a specified period, and neither did." The letter indicated that the Commission believed the February order reopening the evidence was "improvidently entered" and that the appeal should be decided "on the record as the parties made it, with full opportunity to present any pertinent evidence, at the hearing before the Deputy Commissioner."

Again, we disagree with defendant's argument. The statute controlling the receipt of additional evidence on appeal provides:

[i]f application is made to the Commission within 15 days from the date when notice of the award shall have been given, the full Commission shall review the award, and *if good ground be shown* therefor, reconsider the evidence, *receive further*

> *evidence*, rehear the parties or their representatives, and if
> proper, amend the award.

N.C.G.S. § 97-85 (1991) (emphasis added). The powers granted the
Commission to review the award and to receive additional evidence
are "plenary powers to be exercised in the sound discretion of
the Commission." *Lynch v. M.B. Kahn Constr. Co.*, 41 N.C. App.
127, 130, 254 S.E.2d 236, 238, *disc. rev. denied*, 298 N.C. 298, 259
S.E.2d 914 (1979). Whether such good ground has been shown is
discretionary and "will not be reviewed on appeal absent a showing
of manifest abuse of discretion." *Id.* at 131, 254 S.E.2d at 238.
"In exercising its discretion, the Commission is not directed to
make specific findings of fact." *Chisholm v. Diamond Condominium
Constr. Co.*, 83 N.C. App. 14, 20, 348 S.E.2d 596, 600 (1986), *disc.
rev. denied*, 319 N.C. 103, 353 S.E.2d 106 (1987).

The party against whom an award has been made does not
have "a substantive right to require the Full Commission to hear
new or additional testimony. It may, and should, do so if the due
administration of justice requires." *Tindall v. American Furniture
Co.*, 216 N.C. 306, 311, 4 S.E.2d 894, 897 (1939). Upon appeal from
a deputy commissioner's award, the Commission may "receive fur-
ther evidence regardless of whether it was newly discovered
evidence." *Lynch*, 41 N.C. App. at 130, 254 S.E.2d at 238. The
deputy commissioner's findings of fact are not conclusive; only the
Full Commission's findings of fact are conclusive. *Hobgood v. Anchor
Motor Freight*, 68 N.C. App. 783, 785, 316 S.E.2d 86, 87 (1984).
The Commission may "weigh the evidence [presented to the deputy
commissioner] and make its own determination as to the weight
and credibility of the evidence." *Id.* The Commission may strike
the deputy commissioner's findings of fact even if no exception
was taken to the findings.

From these legal principles, we determine that it was within
the Commission's power to ask for additional evidence, here addi-
tional medical evidence. It follows that if it was within the Commis-
sion's discretion to ask for this evidence, it was also within its
power to exclude such evidence. The defendant does not so state,
but implies that it was misled by the Commission and, therefore,
prejudiced in the process. Viewing the totality of the circumstances,
we disagree with the implication. Here, both parties were able
to present evidence to the deputy commissioner. The testimony
included that of a physician, an industrial hygienist, one of the

owners of defendant dry-cleaner, and plaintiff. Defendant could have presented an additional medical or expert opinion on causation to the deputy commissioner. Defendant did not do so and cannot now be heard to complain. *See* N.C.G.S. § 97-27(a) (1991). Defendant also had an opportunity to present additional evidence on appeal to the Full Commission if defendant were able to show good cause, but did not. We find that the Commission did not err when it chose not to consider Dr. Kunstling's response. Where the decision to take additional evidence is discretionary in nature and neither party has put forth good cause for such evidence to be considered, the Commission may decide to exclude evidence which it has previously seen fit to hear.

Affirmed.

Chief Judge HEDRICK and Judge WYNN concur.