Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following was received into evidence:
A. Deposition of Millard L. Metcalf;
B. Deposition of Dr. Schiller;
C. Deposition of Dr. Powell;
D. Videotape of the work site;
E. Notebook containing medical records of Dr. Gangoo, Dr. Haber, Dr. Miller, Dr. Powell, Kings Mountain Hospital, North Carolina Baptist Hospital, Inc., and preliminary autopsy diagnosis;
F. Plaintiff's exhibit in notebook form containing documents from records on file at the North Carolina Division of Environment, Health and Natural Resources, Department of Solid Waste Management, Hazardous Waste Section;
G. 8' x 10' color photographs of the work site and kiln;
H. Defendants' exhibits including records from the North Carolina Department of Environment, Health and Natural Resources, Division of Solid Waste Management, Hazardous Waste Section;
I. Diagram of the FMC facility;
J. Material safety data sheets;
K. Deceased employee's employment application;
L. Record of employment of deceased employee maintained by FMC/Lithco;
M. Potential exposure assessment by Dr. William L. Dyson;
N. Deposition of Dr. Miller with attached exhibits; and
O. Deposition of Dr. Dyson with attached exhibits.
All objections raised during the depositions submitted in this matter are ruled upon in accordance with the law.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
All stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
************
Based upon all of the competent evidence adduced at the hearing before the deputy commissioner, the Full Commission adopts the following:
FINDINGS OF FACT
1. The deceased employee, James Roland Smith, was born January 21, 1944. He was married to Linda Jane Smith on March 2, 1976. They were duly married and living together as man and wife at the time of his death.
2. The decedent was originally employed by Lithium Corporation on July 31, 1972, and remained an employee of that corporation (which was subsequently purchased by FMC Corporation), working at its plant in Bessemer City, Gaston County, North Carolina, where the corporation processes lithium. Decedent was so employed until November 1, 1989 at which time the decedent discontinued his employment due to illness. Decedent remained unemployed until his death on September 8, 1990.
3. During a portion of the time the decedent was employed by defendant-employer, he worked as a kiln operator from November 23, 1981 through March 19, 1985. Decedent's position at the kiln was almost a sole operation. He worked alone unless there were problems in his area. The decedent was responsible for seeing that the hopper was not plugged and to clean it out if it became plugged; to make sure that the scrubbers were operating correctly and switching scrubbers in the event that one became plugged; taking samples of the ore from the kiln in ten to twelve foot dippers and for seeing that there was a proper flow of fuel into the kiln. Decedent made a fifteen to twenty minute inspection of the kiln area every hour, which required him to walk approximately 250 feet to the far end of the kiln where the scrubbers were located and to return to his work site at the opening of the kiln.
4. The rotary kiln was built for the purpose of processing lithium ore. At some point in the past and prior to any regulatory limits by governmental agencies, defendant-employer began to burn hazardous waste chemicals in the rotary kiln for disposal and energy recovery. Some of the chemicals burned included ethyl-benzene, hexan, cyclo-hexan, texsolve C (heptane), and toluene.
5. Benzene is recognized as being a carcinogenic and exposure to benzene increases one's risk of developing leukemia. In determining the amount of exposure which increases one's risk of developing leukemia, the degree and the duration of exposure are considered. Exposure to benzene can also cause skin lesions or sores.
6. The chemicals which defendant-employer disposed of in the kiln during the time decedent was employed by defendant-employer as a kiln operator were pumped into the kiln through closed lines from tanker trucks. Decedent was not responsible for pumping the chemicals into the kiln; however, he would be present at times this was being done as well as when repairs of leaking lines were made. Leaks occurred in the pipe line approximately once a week during the time decedent was employed as a kiln operator.
7. During the time decedent was employed as a kiln operator, defendant-employer was not required to keep records regarding the hazardous waste chemicals disposed of in the kiln. Therefore, no records regarding air quality during the period plaintiff worked as a kiln operator were kept nor were there any records kept regarding the amounts and compositions of the hazardous waste chemicals disposed of in the kiln.
8. While records regarding the waste solvents produced by defendant-employer were kept, these do not accurately reflect the amount of hazardous waste chemicals containing benzene which were disposed of in the kiln.
9. Decedent spent most of his time during his work shift as a kiln operator inside of the control room which was an enclosed area. However, during the time decedent performed his rounds every hour, he would be exposed to dust and fumes produced by the kiln operation. A "sweetish odor" was associated with the fumes admitted by the kiln during the time decedent was employed as a kiln operator. Hexan, a hazardous waste chemical which contains benzene emits a sweet odor.
10. No warning posters were placed about the kiln area nor was the deceased or other employees of defendant-employer notified of the hazardous nature of the chemicals burned in the kiln during the time decedent was employed as a kiln operator. Decedent was not required to wear any mask or respirator during the course of his employment with defendant-employer as a kiln operator and it was not the practice during this period for employees to wear respirators when hazardous waste chemicals were burned in the kiln.
11. During the time the decedent was employed as a kiln operator, he developed sores on his face and hands and later over the upper half of his body which looked like "water blisters." Prior to working in the kiln area, decedent had no sores on his body. The sores on decedent's body cleared up when he discontinued his employment as a kiln operator.
12. While still employed by defendant-employer, decedent who was a non-smoker and non-drinker, became ill complaining of chest pains in November of 1989. He was subsequently diagnosed in early 1990 with myelodysplastic preleukemia, which developed into acute leukemia resulting in his death on September 8, 1990.
13. Decedent sought medical treatment for his condition ultimately seeing Dr. Miller, an oncologist and Dr. Powell, another oncologist, associated with the Bowman Gray School of Medicine.
14. Myelodysplastic leukemia is a form of leukemia often associated with exposure to chemotherapy and/or radiation or to chemical exposure. This form of leukemia usually affects older persons and is not found as frequently in persons of decedent's young age. Decedent had no exposure to chemotherapy or radiation prior to being diagnosed with leukemia. Chromosomal studies performed on decedent were "highly suspicious" of chemical exposure. Decedent had not been exposed to pesticides or other chemicals at his home prior to being diagnosed with leukemia.
15. As a result of decedent's hereinabove described exposure to benzene in the course with his employment with defendant-employer as a kiln operator, decedent was placed at an increased risk of contracting leukemia than the public generally. As Dr. Dyson's testimony failed to account for the fumes and dust created by the kiln operation and in that accurate records regarding the amount of benzene contained in the hazardous waste chemicals disposed of in the kiln were not kept, Dr. Dyson's opinion regarding decedent's exposure to benzene while employed as a kiln operator is not deemed credible.
16. Decedent contracted the disease, leukemia, as a result of his exposure to benzene during the course of his employment with defendant-employer as a kiln operator.
***********
Based upon the foregoing findings of fact the Full Commission enters the following
CONCLUSIONS OF LAW
1. Due to his exposure to benzene as a result of his employment with defendant-employer as a kiln operator, plaintiff developed leukemia; said disease is thus due to causes and conditions which are characteristic of and peculiar to decedent's particular employment as a kiln operator and is not an ordinary disease of life to which the general public is equally exposed outside of said employment. Plaintiff has thus contracted a compensable occupational disease pursuant to the provisions of G.S. § 97-53 (13), Booker v. DukeMedical Center, 297 N.C. 458, 235 S.E.2d 189 (1979); Keel v.HV, Inc., 107 N.C. App. 536, 421 S.E.2d 362 (1992).
2. As a result of the occupational disease giving rise hereto, decedent remained totally disabled from November 1, 1989 until the time of his death on September 8, 1990 entitling him to compensation at the rate of $345.39 per week during said period. G.S. § 97-29.
3. At the time of decedent's death, Linda Jane Smith, decedent's wife was a widow within the meaning of G.S. § 97-2 (14) and therefore, she is conclusively presumed to have been totally dependent upon decedent on the date of decedent's death. G.S. § 97-2 (14); G.S. § 97-39.
4. Linda Jane Smith is entitled to the compensation due pursuant to G.S. § 97-38 to the exclusivity of all others. She is entitled to compensation at a weekly rate of $395.39 beginning September 8, 1990 and continuing for a period of 400 weeks thereafter.
5. Decedent is entitled to have defendants provide all medical treatment arising from this occupational disease to the extent said treatment tended to effect a cure, give relief or lessen decedent's disability.
************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to decedent's estate, compensation for temporary total disability benefits at the rate of $345.39 for the period commencing November 1, 1989 and continuing until September 8, 1990. Said compensation has accrued and shall be paid directly to decedent's estate subject to an attorney's fee hereinafter approved.
2. Defendants shall pay to decedent's widow, Linda Jane Smith, $345.39 per week for 400 weeks beginning September 8, 1990. So much as said compensation has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved and thereafter defendants shall pay weekly benefits to Ms. Smith with every fourth check of said compensation to be paid to plaintiff's counsel until plaintiff is no longer entitled to said benefits.
3. Defendants shall pay any medical expenses incurred by decedent as a result of his occupational disease when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
4. Defendants shall pay or cause to be paid to decedent's widow, Linda Jane Smith, a sum not to exceed $2,000.00 representing the reasonable burial expenses incurred as result of decedent's death.
5. An attorney's fee in the amount of 25% of the compensation awarded herein is hereby approved and allowed for decedent's counsel, this fee shall be deducted from accrued benefits and thereafter every fourth check of compensation benefits due decedent's widow shall be forwarded to Mr. Roberts until decedent's widow is no longer entitled to compensation benefits. When considering the issues involved and the charges for services in representing compensation claims in the area, the undersigned find that a fee in excess of 25% of the compensation payable in this case would be unreasonable.
6. Defendants shall pay the costs due this Commission.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER
BSB:md