The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference.
Following the hearing, the depositions of Dr. Freedman, Dr. Scontsas and private investigator Christopher Baggett were received into evidence and made a part of the record in this case.
* * * * * * * * * * * *
EVIDENTIARY RULING
All objections raised during the depositions of Dr. Mitchell Freedman, Dr. George Scontsas, and Mr. Christopher Baggett were ruled upon in accordance with the law and the Opinion and Award rendered in this matter.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a thirty-six year old left-hand dominant female who has been employed by Moen Incorporated as a fleet analyst since February 1989. Her job duties included entering payroll and other data into a computer data base and other various tasks. Plaintiff's job description which was completed and signed by plaintiff described her job as requiring multiple demands 30 to 60 percent of the time and stated that there were interruptions and distractions 10 to 30 percent of the time. During the majority of plaintiff's computer duties, she used both hands to enter data except on two or three days per month her job required increased use of her right hand to input data for eight to ten hours per day. During these few days per month, she would key using only her right hand. Although this amount of time spent keying with her right hand increased in 1993 and 1994, it decreased markedly in 1995 after changes were made to the computer program. The amount of time that plaintiff actually spent keying with her right hand during these two to three days is insufficient to constitute strenuous repetitive motion as described by plaintiff and as perceived by plaintiff's doctors.
2. Plaintiff is a high school graduate and has vocational training in business management. In addition, she has medical office experience.
3. Plaintiff's medical history is significant in that she has a history of diabetes. Plaintiff had juvenile diabetes and her mother is a diabetic. In addition, plaintiff suffers from Martin-Gruber anastomosis in her right forearm which is a congenital anomaly in which the ulnar nerve and the median nerve cross over each other. However, this condition is unrelated to her complaints.
4. Plaintiff began to have pain and numbness in her right hand sometime between February 1993 and September 1993 but did not report these complaints until September 1993. Despite defendant's attempts to accommodate plaintiff with job modifications including work station changes and assistance with keying, she continued to work and to complain of pain until she took a medical leave of absence on September 12, 1995, approximately two years after she first reported her complaints. While on medical leave, plaintiff did not improve and continued to complain of the same symptoms that she had been experiencing while working at Moen. Plaintiff received her full salary while on leave under defendant's salary continuation plan which is completely employer funded. She had not returned to work at the time of the hearing.
5. Plaintiff saw a number of doctors regarding her complaints. Plaintiff was first seen by Dr. Tin Lee who diagnosed probable carpal tunnel in the right wrist, however he was unable to perform nerve conduction studies. Plaintiff was then referred to Dr. Langley who treated her for approximately two months. Thereafter, plaintiff was referred to Dr. Scontsas who performed nerve conduction studies which were normal. Plaintiff has also been treated by Dr. Sanders who performed electrical studies on plaintiff which were again normal. Plaintiff was also seen by Dr. Sears, Dr. Kasselt, and Dr. Freedman. In addition, she was seen by Dr. Gridley for a psychological exam which was normal. None of these doctors could determine an objective cause for plaintiff's complaints and none recommended surgical intervention.
6. All of the objective tests performed by the many doctors that treated plaintiff revealed no objective findings for plaintiff's subjective complaints. In fact, all six doctors seen by plaintiff between September 1993 and February 1994 returned plaintiff to work at her regular job. In addition, plaintiff was advised that she should consider changing employment or return to work and cope with the symptoms. Dissatisfied with this advice, plaintiff sought treatment from Dr. Sears, a Maine neurologist, who confirmed the other medical opinions and also suggested that she seriously consider changing her employment. Despite the advice of her doctors, plaintiff returned to work with defendant.
7. In October 1994, plaintiff was seen by Dr. Kasselt for continued complaints of problems with her right-hand, including loss of grip strength. Although plaintiff is left-handed, she complained to him that she was having trouble grasping pots and pans with her right hand. Dr. Kasselt referred plaintiff for a grip strength test which suggested symptom magnification and possible malingering on the part of plaintiff.
8. Thereafter, plaintiff was referred to neurologist Dr. Freedman who performed an objective examination which was also normal. On August 31, 1995, plaintiff reached maximum medical improvement and no other treatment was indicated since there was nothing specifically wrong with plaintiff that could be defined. Furthermore, Dr. Freedman recommended that plaintiff stop working in the type of employment in which she was engaging if job modifications did not lessen plaintiff's complaints. Additionally, if relief were not given to plaintiff by breaks from work, then her complaints were not related to her work with defendant. Dr. Freedman interpreted the grip strength test as suggesting malingering on the part of plaintiff or "litigation neurosis."
9. Although there is medical testimony that plaintiff's subjective complaints were caused by some form of repetitive use syndrome or overuse syndrome, no doctor could pinpoint a specific syndrome from which plaintiff suffers nor could they make a specific diagnosis. Furthermore, although there is medical evidence of record to support a causal relation between plaintiff's subjective indefinable right-hand complaints and her employment with defendant, these opinions are given limited weight and are insufficient to support a causal relationship. This is due to the fact that this evidence was based on an inaccurate description of plaintiff's job, in that, plaintiff's job was not highly repetitive. In fact, there were only two or three days per month in which she keyed only with her right hand. Furthermore, these opinions regarding causation are given limited weight due to the fact that they were based on an inaccurate medical history given by plaintiff to her doctors, in that, plaintiff suffered from juvenile diabetes.
10. Even assuming arguendo that plaintiff suffers from a condition or syndrome, there is no medical evidence of record of an increased risk to which plaintiff was exposed of contracting the condition of which plaintiff complains as compared to the public in general.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that the subjective symptoms of which she complains and for which she sought medical treatment beginning in September 1993 resulted from either an injury by accident arising out of and in the course of her employment with defendant or that such employment significantly contributed to the development of said complaints, which are not even clearly definable as a condition or syndrome.
2. Plaintiff was not placed at an increased risk of developing the complained of symptoms, or assuming arguendo, the existence of a definable condition, as compared to members of the general public so as to constitute an occupational disease within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 (6); 97-53 (13); Click v. Pilot Freight Carrier,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980); See also Keel v. HMVInc., 107 N.C. App. 536 (1992).
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim must, under the law, be and the same is hereby, Denied.
2. Defendants shall pay expert witnesses fees to Dr. Mitchell Freedman in the amount of $200.00 and to Dr. George Scontsas in the amount of $200.00.
3. Each side shall bear its own costs.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER