In view of defendants motion and considering that plaintiff failed to timely file his appeal, the Commission must dismiss the appeal barring a showing of excusable neglect by plaintiff. Moore v. Cityof Raleigh, 135 N.C. App. 332, ___ S.E.2d ___ (1999). In this case, plaintiff has failed to show excusable neglect, therefore plaintiffs claim is hereby Dismissed.
However, assuming arguendo that defendants motion was denied, the undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and finds that the appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff-employee is David Lewis Smallwood.
2. Defendant-employer is Georgia-Pacific, Inc.
3. Georgia-Pacific, Inc. is self-insured.
4. Defendant-employer regularly employs (3) or more employees and is bound by the provisions of the North Carolina Workers Compensation Act.
5. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
6. For the purposes of this matter, plaintiff-employees average weekly wage is $404. 00, yielding a compensation rate of $269. 35.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Prior to his employment with defendant-employer, plaintiff sustained a fracture to his left wrist while working for a shipyard in Newport News, Virginia.
2. Plaintiff worked for defendant-employer in a clean-up position. This job involved clearing the plant floor of sawdust and wood chips.
3. Plaintiffs activities with defendant-employer were varied, and involved not only tasks such as cleaning with a broom or forced-air device, but also activities such as driving a front-end loader.
4. Plaintiff testified that this job required that he be on his hands and knees, but only for an hour at a time.
5. Plaintiff performed the same job for fifteen (15) years without experiencing any symptoms.
6. Plaintiff has alleged that his symptoms are due to his supporting himself in his work with his left hand. However, parts of the evidentiary record describe the symptoms as bilateral.
7. Plaintiff reported that he first experienced symptoms of numbness in his hands in 1996. During that same time period plaintiff began welding outside of his employment with defendant-employer.
8. Robert Bennet, plaintiffs direct supervisor, testified that another worker who performed the same job as plaintiff reported no carpal tunnel symptoms at any time.
9. Plaintiff has a history of arthritis in his family and has been diagnosed with arthritis. In addition, the paternal side of plaintiffs family has a history of diabetes.
10. Plaintiff has smoked a pack of cigarettes each day for almost thirty-five (35) years.
11. A record from Ahoskie Family Physicians dated January 14, 1997, the earliest medical document contained in the stipulated exhibits describes plaintiffs condition and his initial appointment with Dr. Daniel Lee. This document makes no reference to any connection between plaintiffs alleged condition and his employment.
12. On the claim form pertaining to the treatment on January 17, 1998, with East Carolina Neurology, which asked whether plaintiffs condition was related to his employment, the "no option is checked and the document is signed by plaintiff.
13. Dr. Lee initially saw plaintiff on January 17, 1997. On that date, Dr. Lee diagnosed left hand weakness and numbness in the distribution of the ulnar nerve. Dr. Lee also took plaintiff out of work for two (2) weeks.
14. Based upon EMG nerve conduction studies, Dr. Lee diagnosed bilateral carpal tunnel syndrome on February 11, 1997, and referred plaintiff to Dr. Denis McGillicuddy. Furthermore, Dr. Lee placed plaintiff on light duty work until his evaluation with Dr. McGillicuddy.
15. Plaintiff underwent a left carpal tunnel release performed by Dr. McGillicuddy on March 7, 1997. Dr. McGillicuddy released plaintiff to full-duty work on April 29, 1997. Dr. McGillicuddy confirmed this opinion in his deposition, stating that plaintiff could return to his previous employment.
16. Dr. Lee recommended physical therapy on March 18, 1997, as he found plaintiff slow in his desire to start moving his fingers.
17. Nerve conduction studies after the surgery revealed marked improvement in the mononeuropathies at the left wrist.
18. Dr. McGillicuddy assessed a ten (10) percent permanent partial impairment to the left hand on September 2, 1997. Dr. McGillicuddy also felt on that date that plaintiff was not a candidate for additional surgery.
19. Dr. Lee referred plaintiff to a rheumatologist, Dr. Edward Treadwell, with the East Carolina University School of Medicine for evaluation, but plaintiff did not keep that appointment.
20.When asked about plaintiffs complaints of pain radiating into the neck and as far down as the left leg, Dr. McGillicuddy responded that the complaints were very unusual and that he could not correlate them to anything.
21. Dr. McGillicuddy also opined in his deposition, that in light of plaintiffs test results there may have been a coincidental or separate disease, as opposed to carpal tunnel syndrome.
22. Dr. Treadwell opined that plaintiff appeared to have Raynauds syndrome, which is typically a hereditary condition which compromises blood flow to the extremities. Dr. Treadwell also opined that plaintiffs prior fracture could have caused the arthritic changes, which were responsible for the complaints which persisted post-surgery. Dr. Treadwell could not testify as to the actual cause.
23. Dr. Treadwell stated that plaintiff could perform work in at least a light position, such as manning a guard house.
24. Dr. Lee testified that the history he was given by plaintiff regarding his work was not consistent with the videotape of the actual position.
25. Dr. Lee did believe that plaintiff was capable of performing such cleaning tasks as sweeping for thirty (30) minutes at a time, and that he could perform his usual job as long as he varied among the activities every fifteen (15) to thirty (30) minutes.
26. Plaintiff does not suffer from an occupational disease which is characteristic of and peculiar to employment with defendant-employer.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs burden in the present case, as to causation, is to show that the condition alleged is due to causes and conditions characteristic of and peculiar to the particular trade, occupation or employment, excluding ordinary diseases of life to which the general public is equally exposed outside of the employment. N.C.G.S. 97-53(13); Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
2. As a matter of law, plaintiff has not met his burden as to causation described in N.C.G.S. 97-53(13). While the law states that the claimant is not required to prove the causal connection by "absolute certainty, the evidence in the present case as to causation is ambivalent at best, and there is considerable evidence of other causes, including hereditary conditions, non-work-related activities, and prior injuries. Keel v. HV Inc.,107 N.C. App. 536, 421 S.E.2d 362 (1992). As plaintiff has failed to meet this burden, he is not entitled to workers compensation benefits.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/nwg/bjp