* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding good grounds to receive further evidence, the Full Commission upon reconsideration of the evidence, reopens the record for receipt of additional evidence.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the Plaintiff's injury, an employee-employer relationship existed between Plaintiff and Defendant Pitt County Memorial Hospital.
3. Defendant was self-insured at all times relevant to this claim. Aegis Administrative Services was the servicing agent at all relevant times.
4. The date of Plaintiff's injury by accident was July 27, 2002.
5. Plaintiff's average weekly wage may be determined from an accurate Industrial Commission Form 22 wage chart prepared by Defendant.
6. Defendant admits that Plaintiff reported an on-the-job incident occurring on July 27, 2002, but denies that such incident caused the condition for which Plaintiff sought treatment after August 2003, and eventually underwent surgery with Dr. Larry Davidson on December 5, 2003.
 * * * * * * * * * * *
Upon review of the evidence of record, the Full Commission finds and concludes that good grounds exist to reopen the record and therefore enters the following:
 ORDER
On July 27, 2002, Plaintiff was employed by Defendant Pitt County Memorial Hospital as a Nursing Assistant II, and her job duties included lifting patients. On July 27, 2002, Plaintiff injured her back while helping two other staff members lift a patient from a commode to a wheelchair.
Prior to the work-related incident, Plaintiff was involved in a motor vehicle accident on June 26, 2002. Her vehicle veered off the road, ran into a ditch and came to an abrupt halt. Plaintiff was transported to the hospital and received medical treatment for left knee, lower back and hip pain. A CT scan of Plaintiff's pelvis revealed facet joint arthrosis in the lower lumbar spine and degenerative disc disease at L5-S1. Plaintiff was prescribed Percocet and Flexeril, and was instructed upon discharge to follow up with an orthopedist and to return if symptoms worsened. On June 28, 2002, Plaintiff presented for follow-up treatment with Dennis A. Czuchra, PA-C. Plaintiff had mild tenderness over the spine and was diagnosed with a resolving contusion of her back and hip. Plaintiff returned to Mr. Czuchra on July 1, 2002, at which time she had mild tenderness to palpation over the spine. On July 23, 2002, Plaintiff requested a refill of pain medication. Plaintiff was cleared to return to work prior to her workplace injury on July 27, 2002.
After her work-related injury on July 27, 2002, Plaintiff continued to work. On August 7, 2002, she spoke with J. Larkins, R.N. at Pitt County Memorial Hospital Occupational Health and reported that her low back was "sore" for a while, but that she had taken pain medication and was feeling better.
Plaintiff did not seek medical treatment specifically for the July 27, 2002 incident until August 12, 2002, when she presented to Dr. Marian Swinker at Pitt County Memorial Hospital Occupational Health. Plaintiff reported that her back was "killing her." Dr. Swinker diagnosed low back pain and pelvic dysfunction, left worse than right; prescribed Darvocet; placed Plaintiff on light-duty work restrictions and referred her to physical therapy.
Plaintiff began physical therapy at Therapeutic Life Center with Sherrie Odom, P.T., on August 15, 2002. After a short course of physical therapy, she was discharged because there were no objective findings to warrant continued treatment and Plaintiff was allegedly uncooperative.
On August 26, 2002, Dr. Swinker noted that Plaintiff's subjective complaints were out of proportion to objective findings and recommended that she undergo a Functional Capacity Evaluation (FCE). Plaintiff could not undergo an FCE at the time because of her uncontrolled blood pressure. Plaintiff began working in a light-duty capacity on August 27, 2002.
On October 10, 2002 at Dr. Swinker's referral, Plaintiff presented to Dr. Max R. Kasselt for a second opinion evaluation. Dr. Kasselt opined that there was radiological evidence of multilevel lumbar degenerative disc disease, but no evidence of any aggravation of this condition by the July 27, 2002 workplace incident. Dr. Kasselt determined that Plaintiff had reached maximum medical improvement from both the car accident and the work injury, with no permanent physical impairment from either event. Plaintiff continued to perform light-duty work with Defendant-Employer until approximately September 2003.
On December 2, 2002, Plaintiff underwent an FCE at ProActive Therapy. The FCE activities were terminated secondary to Plaintiff's complaints of chest pain and shortness of breath.
On December 23, 2002, Dr. Swinker concluded that no further medical treatment was necessary arising from the workplace incident and concluded that Plaintiff was at maximum medical improvement with no permanent restrictions related to her work injury.
Upon referral of Defendant, on April 24, 2003 Plaintiff presented to Dr. J. Th. Bloem for another second opinion evaluation for low back pain. Straight leg raises were 90/90, but touching of the back with very light touch evoked an enormous, painful reaction. An MRI completed on May 8, 2003, was normal except for evidence of mild lumbar degenerative changes. Dr. Bloem determined that surgical intervention was not warranted and recommended a series of epidural steroid injections.
On June 27, 2003, Plaintiff returned to Dr. Bloem and reported that the first epidural steroid injection was somewhat helpful. On August 7, 2003, Plaintiff reported a second epidural steroid injection did not help at all. Dr. Bloem informed Plaintiff that he had no further treatment options and released her from his care.
Dr. Bloem noted that his examinations of Plaintiff were normal, her MRI results revealed no herniated disc or pathology, conservative treatment measures were unsuccessful, and Plaintiff's severe symptomatology could not be correlated with any objective evidence. He gave no impairment rating and released Plaintiff to return to work. Defendant did not pay for additional medical treatment after Plaintiff's last visit to Dr. Bloem on August 7, 2003.
On her own, Plaintiff presented to Dr. Clarence E. Ballenger on October 2, 2003. She underwent a lumbar myelogram on October 27, 2003, which revealed severe spinal stenosis at L4-5. On October 30, 2003, Dr. Ballenger referred Plaintiff to an orthopedist for further treatment. Plaintiff presented to Dr. Harold Vandersea, an orthopedist, on November 10, 2003. Dr. Vandersea noted that Plaintiff had spinal stenosis and instability at L4-5, recommended a spinal fusion and weight loss and referred Plaintiff to a neurosurgeon. Plaintiff presented to Dr. Larry Davidson, a neurosurgeon, on November 18, 2003.
On December 5, 2003, Plaintiff underwent decompression surgery at L4-5 with posterolateral fusion with instrumentation, performed by Dr. Davidson. Plaintiff went out of work pursuant to the Family Medical Leave Act at that time. On March 8, 2004, Plaintiff returned to Dr. Davidson for post-operative evaluation.
Upon reconsideration of the evidence, the Full Commission is of the opinion that Plaintiff had an essentially negative MRI upon which some of her doctors relied and a subsequent myelogram that showed results that were serious enough to Dr. Davidson to warrant surgery. Specifically, Dr. Bloem concluded on September 1, 2003, that Plaintiff's MRI results revealed no herniated disc or other pathology. However, Plaintiff underwent a lumbar myelogram with Dr. Ballenger on October 27, 2003, which revealed severe spinal stenosis at L4-5.
The Full Commission concludes that there is insufficient evidence in the record from which to determine whether the back condition for which Plaintiff underwent surgery on December 5, 2003, by Dr. Larry Davidson is casually related to her compensable workplace injury of July 27, 2002. Therefore, the Full Commission further concludes that good grounds exist to receive additional expert medical evidence to determine whether the myelogram results are more reliable than the MRI results, whether Plaintiff's workplace incident caused the condition shown on the myelogram or aggravated her pre-existing spinal stenosis shown on the myelogram and whether Plaintiff's surgery is causally related to her compensable July 27, 2002 specific traumatic incident.
N.C. Gen. Stat. § 97-85, grants the Commission the plenary power to receive further evidence when reviewing a decision of the Deputy Commissioner, provided "good ground be shown therefore." The decision to receive additional evidence is within the sound discretion of the Commission, and will not be reversed on appeal unless the Commission manifestly abuses its discretion.Cummins v. BCCI Const. Enterprises, 149 N.C. App. 180,560 S.E.2d 369 (2002); Pittman v. International Paper Co.,132 N.C. App. 151, 155, 510 S.E.2d 705, 708 (1999); Keel v. H V Inc.,107 N.C. App. 536, 542, 421 S.E.2d 362, 367 (1992).
IT IS THEREFORE ORDERED that the record is reopened for additional expert, medical opinion testimony on whether the myelogram results are more reliable than the MRI results, whether Plaintiff's workplace incident caused the condition shown on the myelogram or aggravated the pre-existing spinal stenosis shown on the myelogram and whether Plaintiff's surgery is causally related to her compensable July 27, 2002 specific traumatic incident. The Full Commission retains jurisdiction of this case.
No costs are assessed at this time.
This the __ day of August 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER