* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding good grounds to receive further evidence, the Full Commission upon reconsideration of the evidence, reopens the record for receipt of additional evidence.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. This claim arises from an admittedly compensable injury plaintiff sustained on March 13, 2004.
2. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. There was an employer/employee relationship between the named employer and the named employee at the time of the injury in question.
5. AIG Claims Services, Inc. was the carrier on the risk on or about March 13, 2004.
6. The parties stipulated the following exhibits into evidence:
 • Stipulated Exhibit 1
 • Industrial Commission Forms/Filings
 • Medical Records
 • Discovery Responses
 • Completed Form 22s
 * * * * * * * * * * *
Upon review of the evidence of record, the Full Commission finds and concludes that good grounds exist to reopen and therefore enters the following:
 ORDER
1. This case originally arises from an accepted left foot injury plaintiff sustained on March 13, 2004, while working as a security officer for Guardsmark Security. Plaintiff was lifting a heavy gurney, when the gurney rolled over his left foot, resulting in a crush injury. Defendants accepted plaintiff's claim pursuant to a Form 60.
2. Plaintiff initially presented to MedZone Occupational Health on March 17, 2004 reporting complaints of left foot pain following a work injury. Plaintiff was diagnosed with a left foot strain, and the treating physician recommended conservative treatment. He returned to Medzone for follow-up on April 14, 2004 reporting no improvement of his left foot pain. At this *Page 3 
time, the treating physician recommended that plaintiff undergo a bone scan of the left foot/ankle and continue his conservative treatment measures.
3. On April 27, 2004, plaintiff was referred to High Point Orthopaedic and Sports Medicine for additional treatment and evaluation by Dr. Christopher Bashore. Dr. Bashore diagnosed plaintiff with a left foot crush type injury, without evidence of bony abnormalities and recommended a bone scan of the left foot/ankle.
4. The left foot/ankle bone scan was completed on May 18, 2004 and revealed no definitive evidence of acute injury. Dr. Bashore noted that plaintiff's pain was out of proportion to his objective findings and what would be expected from such an injury.
5. Dr. Bashore referred plaintiff to Dr. Lucas, also at High Point Orthopaedic and Sports Medicine, for additional treatment and evaluation of a possible occult/fracture injury. Dr. Lucas initially diagnosed plaintiff with left foot pain, and a contusion to the peroneal nerve. The peroneal nerve irritation was unrelated to the work-related injury.
6. On August 19, 2004, Dr. Lucas changed plaintiff's diagnosis from peroneal nerve injury to synovitis. At this visit, Dr. Lucas was of the opinion that plaintiff's pain complaints were out of proportion to his physical examination.
7. Plaintiff underwent a synovectomy on December 7, 2005 with Dr. Lucas. The surgery was successful and completed without difficulty. Plaintiff's first visit for postoperative treatment was on December 15, 2005. The x-rays revealed good bone alignment and otherwise normal findings.
8. Plaintiff continued to follow up with Dr. Lucas. The x-rays continued to show good bone alignment. However, on March 16, 2006 plaintiff began complaining that the second and third toes of his left foot were "drawn up." On physical exam, Dr. Lucas determined that *Page 4 
plaintiff was actively holding his toes in that position. Dr. Lucas testified at deposition that if you do not have a contracture and are intentionally trying to hold your toes up, it is pretty easy to detect and that plaintiff was intentionally holding his toes up. Dr. Lucas opined that plaintiff did not have a contracture to his toes, but was actively posturing his foot in the position. Dr. Lucas further testified that if plaintiff was distracted during physical examination, he was able to pull plaintiff's toes down.
9. Dr. Lucas further testified that plaintiff could be put to sleep and a determination made as to whether plaintiff's toes are down when he is asleep and a determination made as to whether he did have a contracture to his toes. This test was never performed.
10. Plaintiff returned for final evaluation with Dr. Lucas on August 23, 2006. Dr. Lucas noted that plaintiff was again holding his toes out and if distracted you could pull his toes back down. Dr. Lucas opined that plaintiff was posturing his foot intentionally. Plaintiff was released with permanent restrictions of no lifting greater than fifty pounds, occasional walking, standing, squatting and climbing. Dr. Lucas also opined that plaintiff was released from additional treatment and that no further medical treatment was necessary.
11. Subsequently, plaintiff sought treatment on his own at Duke University Medical Center. Following examination at Duke, the plaintiff was scheduled for surgery. Plaintiff underwent surgery on July 24, 2007 for problems he was having with the second, third, and fifth toes of his left foot.
12. The Full Commission concludes that there is insufficient evidence in the record from which to determine whether plaintiff was intentionally posturing his foot or if he had continuing problems related to his admittedly compensable injury on March 13, 2004. Therefore, the Full Commission further concludes that good grounds exist to receive additional *Page 5 
expert medical evidence to determine whether plaintiff had ongoing problems related to his compensable injury or was actively holding his toes up.
13. N.C. Gen. Stat. § 97-85 grants the Commission the plenary power to receive further evidence when reviewing a decision of the Deputy Commissioner, provided "good ground be shown therefore." The decision to receive additional evidence is within the sound discretion of the Commission, and will not be reversed on appeal unless the Commission manifestly abuses its discretion. Cummins v. BCCI Const.Enterprises, 149 N.C. App. 180, 560 S.E.2d 369 (2002); Pittman v.International Paper Co., 132 N.C. App. 151, 510 S.E.2d 705 (1999);Keel v. H V, Inc., 107 N.C. App. 536, 421 S.E.2d 362 (1992).
IT IS THEREFORE ORDERED that the record in this case is reopened for additional evidence to be presented by deposition testimony or stipulated documents related to plaintiff's treatment with Duke University Medical Center, plaintiff's subsequent surgery and follow-up care. The parties shall have 60 days to submit said additional evidence and 15 days thereafter to submit written supplemental briefs or contentions to Commissioner McDonald. The Full Commission retains jurisdiction of this case.
This the 11th day of December, 2007.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 6 
S/___________________ DIANNE C. SELLERS COMMISSIONER